UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

MARYANN MILLS,

       Plaintiff,                                    Case No. 1:16-cv-286

v.

                                                       HON. JANET T. NEFF

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,
_____/

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner). Plaintiff Maryann Mills seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they

are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was fifty-three years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.35, 62.) She completed high school and was previously employed as a stock clerk. (PageID.85, 193.) Plaintiff applied for benefits on November 5, 2013, alleging disability beginning November 15, 2013, due to chronic back pain, lumbar spondylosis, hyper fibromyalgia, chronic neck pain, arthritis in both of her hands, and depression. (PageID.94, 159–162.) Plaintiff's application was denied on February 28, 2014, after which time she requested a hearing before an ALJ. (PageID.106–109, 113–114.) On February 25, 2015, Plaintiff appeared

2

with her counsel before ALJ Carol Guyton for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.57–92.) In a written decision dated March 12, 2015, the ALJ determined that Plaintiff was not disabled. (PageID.35–56.) On January 28, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.20–25.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b);

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c);

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d);

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e);

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f).

by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Guyton determined that Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (PageID.40.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) degenerative disc disease of the lumbar spine; (2) lumbar spondylosis; (3) bilateral carpal tunnel syndrome; and (4) obesity. (PageID.40.) The ALJ also determined that Plaintiff had several nonsevere impairments. (PageID.41–43.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.43–44.) At the fourth step, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) limited to lifting and carrying ten pounds frequently and up to twenty pounds occasionally. However, the claimant can only frequently, as opposed to constantly, handle and finger with her bilateral upper extremities. The claimant can stand and walk for four hours, and sit for six hours in an eight-hour workday with normal breaks. The claimant can only occasionally balance, stoop, crouch, kneel, crawl, and climb ramps and stairs, and she can never climb ladders, ropes, or scaffolds. Additionally, the claimant must avoid concentrated exposure to extreme cold, hazardous machinery, and unprotected heights. The claimant must also avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation

(PageID.44.) Continuing with the fourth step, the ALJ found that Plaintiff was unable to perform any of her past relevant work. (PageID.50.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform

given her limitations.  *See Richardson*, 735 F.2d at 964.  The VE testified that Plaintiff could perform other work as an office helper (180,000 jobs), packager (170,000 jobs), and production inspector (50,000 jobs).  (PageID.88–89.)  Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy.  (PageID.51.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from November 15, 2013, through March 12, 2015.  (PageID.51–52.)

## DISCUSSION

### 1. The ALJ's Credibility Determination is Supported By Substantial Evidence.

At the administrative hearing, Plaintiff testified that she was impaired to an extent far greater than that found by the ALJ.  She testified she could not return to her past work because she could not lift the boxes containing items she needed to stock.  (PageID.68.)  She had pain in her lower back and hands, rating her back pain at a four on a scale of zero to ten.  (PageID.72, 74.)  Regarding her exertional activities, she could only walk to the corner and back while wearing a brace and stand for twenty minutes.  (PageID.73–74.)  The ALJ found Plaintiff's allegations were not fully credible.  (PageID.48.)  Plaintiff claims the ALJ erred in doing so.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002).  As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash*

5

*v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have

held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted). The ALJ considered Plaintiff's allegations as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limited effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> In assessing the claimant's credibility, the undersigned first reiterates that the objective medical studies and clinical examination findings do not fully corroborate the claimant's alleged symptoms and limitations. Rather, the record suggests that the claimant's treatment has been relatively successful in controlling her symptoms. For example, the medical evidence reveals that the claimant has not pursued any significant additional treatment for symptoms of carpal tunnel syndrome following her November 2013 surgery. Additionally, the claimant has regularly told her treating providers that she experienced pain relief with epidural injections and medication usage. This evidence suggests that the claimant's impairments may not be as limited as she has generally alleged.
>
> The claimant has also described daily activities that are not limited to the extent one would expect given her allegations of disabling symptoms. These activities include driving, grocery shopping, preparing simple meals, housecleaning, dusting, vacuuming, making beds, doing laundry, ironing, caring for her personal hygiene, helping to care for a pet dog, managing her own money, living with her husband, visiting with her family, speaking with others on the phone, using an online social network, attending church, volunteering at her church occasionally, playing pool, riding a bicycle, reading, doing puzzles, and watching television (Ex. 5E; 11E). A third party function report submitted by the claimant's husband, Michael Mills, generally corroborates these activities of daily living (Ex. 4E). Because of these inconsistencies, the undersigned finds that the claimant's statements concerning the intensity, persistence and limiting effects of her alleged symptoms are not fully credible.

(PageID.47–48.)

Plaintiff argues the ALJ's analysis here is flawed. She argues the "ALJ should have applied the factors in 20 C.F.R. § 404.1529(c)(2)" and that based on those factors, the ALJ's analysis is not supported by substantial evidence. (PageID.703, 706.) Plaintiff is correct that the CFR and associated agency rulings direct that the ALJ must consider several factors when assessing the credibility of a claimant's statements. *See* SSR 96–7p, 1996 WL 374186, at *3 (S.S.A. July 2, 1996) (citing 20 C.F.R. § 404.1529(c)). But there is no requirement that the ALJ explicitly discuss every factor. Rather under SSR 96–7p, the ALJ is required only to "consider" the seven-listed factors. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009); *see also Parsons v. Astrue*, No. 1:09–cv–2695, 2011 WL 887618, at *6 (N.D. Ohio Feb. 17, 2011) ("The ALJ conducted the appropriate analysis pursuant to SSR 96–7p, although not articulated in the manner Plaintiff would prefer."); *Coleman v. Astrue*, No. 2:09–cv–36, 2010 WL 4094299, at *15 (M.D. Tenn. Oct.18, 2010) ("There is no requirement that the ALJ expressly discuss each listed factor."); *Roberts v. Astrue*, No. 1:09–cv–1518, 2010 WL 2342492, at *11 (N.D. Ohio June 9, 2010) ("[T]he ALJ need not analyze all seven factors contained in SSR 96–7p to comply with the regulations."). The ALJ's discussion began with a recitation of the relevant regulations and social security rulings she was obligated to consider, including SSR 97–7p and 20 CFR 404.1529(c). (PageID.44.) The ALJ's reference to SSR 96–7p indicates that she "considered" all the ruling's factors. *Brown v. Comm'r of Soc. Sec.*, No. 1:10–cv–705, 2012 WL 951556, at *5 (W.D. Mich. Feb 27, 2012).

Moreover, the ALJ provided several reasons why she did not find Plaintiff credible. She noted the severity of Plaintiff's complaints was inconsistent with her extensive daily activities. It is well established that an ALJ may consider "household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Walters*, 127 F.3d at 532; *see*

*also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). The ALJ also discussed the treatment that Plaintiff received, finding that Plaintiff had not undergone any additional significant treatment for carpal tunnel syndrome, and regularly received injections for her back which provided relief. (PageID.48.) Plaintiff argues that the injections have not been as effective as before, and while that might be true, Plaintiff misses the mark. The ALJ found the severity of Plaintiff's complaints to be inconsistent with the relatively conservative treatment she pursued.

Finally, the ALJ found that the Plaintiff's allegations were not corroborated by the objective medical record. (PageID.47.) Plaintiff complains that the ALJ failed to cite to the medical evidence she relied on. (PageID.703.) But the ALJ provided an extensive discussion immediately preceding the credibility section. There was no need for her to discuss the evidence a second time. As the ALJ found, Plaintiff reported in her function report that she was able to lift thirty pounds. (PageID.225.) On December 15, 2013, Plaintiff had a good follow-up after surgery for her carpal tunnel syndrome. She had unrestricted work activity effective the end of the month. (PageID.428.) As the ALJ noted, Plaintiff does not appear to have sought further treatment for her wrists or hands past this date. Regarding Plaintiff's back, the ALJ discussed several records relating to this pain. She noted a January 2015 treatment note in which Plaintiff reported she had experienced eighty percent relief for roughly four weeks and that her overall function was improved. (PageID.557.) She was found to have a non-antalgic gait, and normal muscle strength. (PageID.557.) Plaintiff reported a good benefit from her medications and continued with physical therapy. (PageID.558.) She was given another injection on January 6, 2015. (PageID.548.) In sum, the Court does not doubt that Plaintiff experiences a certain amount of difficulty due to her impairments, however such

limitations are adequately accounted for in the RFC. This claim of error is rejected.

### 2. The ALJ's Discussion of the Medical Opinions is Supported By Substantial Evidence.

Plaintiff next argues the ALJ erred in assigning great weight to Dr. Shanti Tanna's opinion, a state agency consultant. Specifically, Plaintiff claims that the ALJ could not rely on the opinion because the consultant had not reviewed the entire record that demonstrated her worsening condition. (PageID.706–707.) "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12-cv-2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)); *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). However, "[w]hen an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence, especially when that evidence reflects ongoing treatment," the Sixth Circuit requires "some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (internal citations and quotation marks omitted). The ALJ gave sufficient indication here, explicitly noting in her discussion of Dr. Tanna's opinion that she was adopting a more restrictive RFC due to further developments in the record. (PageID.49.) Accordingly, this claim is rejected.

Plaintiff also argues the ALJ erred in assigning little weight to the opinion of Ms. Amy Vincent, an occupational therapist. (PageID.708.) On February 16, 2015, Ms. Vincent found that Plaintiff could only perform sedentary work for two to four hours a day. (PageID.607.) Plaintiff appears to argue the ALJ's analysis of this opinion was inconsistent with the requirements

of social security rulings. The Court disagrees.

Occupational therapists are not "acceptable medical sources." *See* 20 C.F.R. § 404.1513(a), (d). Because Ms. Vincent is an occupational therapist, her opinion is considered as evidence from an "other" source. *See id.* (stating evidence from "other" medical sources includes information from nurse-practitioners, physician's assistants, naturopaths, chiropractors, audiologists and therapists); *see also Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 399 (6th Cir. 2014) (the opinion of a therapist "is not properly classified as an 'acceptable medical source' opinion but is an 'other source' opinion" under 20 C.F.R. § 404.1513(d)). As Plaintiff correctly notes, SSR 06–3p clarifies how the Social Security Administration "consider[s] opinions from sources who are not 'acceptable medical sources.'" SSR 06–3p, 2006 WL 2329939, at *1 (S.S.A. Aug. 9, 2006)). But Plaintiff seeks more than what the ruling requires.

SSR 06–3p begins by emphasizing the critical distinctions between opinions offered by "acceptable medical sources" and opinions supplied by "other sources." Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *Id.* at *1. The opinions of an occupational therapist fall within the category of information provided by "other sources." *Id.* at *2; *see* 20 C.F.R. § 404.1513(d). The social security regulations require only that information from other sources be "considered." 2006 WL 2329939, at *1, 4 (citing 20 C.F.R. §§ 404 .1512, 1527, 416.912, 927). The ruling recognizes, however:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly

11

> assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06–03p, 2006 WL 2329939, at *3 (S.S.A. Aug. 9, 2006). Accordingly, the ruling further provides that "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6. It further states, in only a permissive fashion, that the factors for considering acceptable source opinions "can" be applied to these opinions. *Id.* at *4. The above standards were easily met here. The ALJ thoroughly discussed the opinion and provided several reasons for assigning it only little weight. The ALJ correctly noted that Ms. Vincent was a non-acceptable source because she was an occupational therapist. Nothing in SSR 06–03p states that it was wrong to do so. The ALJ also found the opinion was not supported by the record–including Plaintiff's own statements about how much she could lift and carry. (PageID.49.) All this was more than sufficient for considering other source opinions. The Court finds no error here.[2]

### 3. Plaintiff Has Waived Several Arguments.

Plaintiff next presents a hodgepodge of arguments, claiming the ALJ erred by: failing to provide a function by function analysis of the effect of her impairments, failing to address the side

---

[2] Plaintiff later argues that if Ms. Vincent's opinion was accepted, she would be disabled under Rule 201.14 of the Medical-Vocational Guidelines. (PageID.710.) Perhaps. But for reasons explained above, the ALJ properly gave only little weight to this opinion, and so whether Plaintiff would be disabled under Ms. Vincent's opinion is of no matter.

12

effects of her medications, failing to address her nonsevere impairments, and finding that she could perform light work. (PageID.707–708.) In making these arguments, however, Plaintiff's cites to little, if any, authority, and presents arguments consisting entirely of a single sentence. Accordingly, Plaintiff has waived these arguments. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.").

Even if Plaintiff had not waived these arguments, they would fail. Regarding a function by function analysis, the Sixth Circuit has recognized that although such an "analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (citation omitted). Rather, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.* (citation omitted); *see also Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x. 719, 729 (6th Cir. 2013) (SSR 96–8p merely requires the ALJ to "address a claimant's exertional and nonexertional capacities and also describe how the evidence supports her conclusions"). The ALJ's analysis easily survives scrutiny here.

As for Plaintiff's side effects, allegations of a medication's side effects must be supported by objective medical evidence. *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665–66 (6th Cir. 2004). Here, Plaintiff cites only to the completed function reports. (PageID.707.) While the ALJ acknowledged these complaints, the ALJ's lack of discussion on this point appears to be due to a lack of any medical record substantiating these complaints. Accordingly this

argument fails.

Plaintiff's next complaint–that the ALJ failed to address her nonsevere impairments of asthma and neck and foot pain in the RFC discussion–must also fail.  It is true the "Social Security Act requires the Secretary to consider the combined effects of impairments that individually may be nonsevere, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability." *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988).  But the ALJ's decision did not violate this requirement.  Indeed, the ALJ began by noting her obligation to consider all of Plaintiff's impairments when crafting the RFC–including those that are not severe. (PageID.39.)   The ALJ went on to discuss Plaintiff's neck pain at several points in the RFC discussion.  (PageID.45–46.)  Similarly she discussed the off-work leave slips from Dr. Tiller for Plaintiff's plantar fasciitis.  (PageID.48.)   Regarding Plaintiff's asthma, the ALJ indicated she "included respiratory limitations in the claimant's [RFC] to avoid further asthma exacerbations." (PageID.41.)   All this demonstrates the ALJ adequately accounted for Plaintiff's non-severe impairments in the RFC.

Finally, Plaintiff argues that the "medical evidence does not support a finding that the Plaintiff could sustain work for eight hours a day, five days a week." She further argues that her need for a brace indicates she could not perform stooping, bending, crouching, kneeling or crawling. (PageID.708.)   Plaintiff largely depends on her own function reports in support of this assertion, and the only treatment record she cites is an August 6, 2013, CT scan.  (PageID.708.)  That scan revealed disc protrusions at L2-L3, L3-L4, and L4-L5.  There was moderate central stenosis at L3-L4 and moderate to severe central stenosis at L4–L5. (PageID.296.) The ALJ discussed this record, but noted that the doctor declined to recommend surgery, and instead recommended spinal cord

stimulation.  At a follow up, Plaintiff had a normal gait with normal strength, and was given an injection.  (PageID.46.)  This record was also available to Dr. Tanna, who nonetheless found Plaintiff was capable of light work.  (PageID.99.)  Dr. Tanna also found that Plaintiff could frequency balance, kneel, crouch, and crawl, and occasionally stoop.  (PageID.99–100.)  As noted above, the ALJ gave great weight to this opinion but found Plaintiff was further limited due to later developments in the record.  Importantly, other than this bare assertion, Plaintiff points to no record indicating she was further limited.  For all the above reasons, substantial evidence supports the ALJ's RFC decision.

### 4. Substantial Evidence Supports the ALJ's Step 5 Determination.

Finally, Plaintiff points out that the VE responded to her counsel's questioning that if Plaintiff were to miss work two or more times a month, it would preclude all work.  (PageID.91, 710).  But this testimony does not affect the ALJ's determination.  It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993); *see also Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 715 (6th Cir.2013) ("An ALJ is only required to incorporate into a hypothetical question those limitations he finds credible."); *Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 438 (6th Cir.2010) ("[I]t is [ ] 'well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.'") (quoting *Casey*, 987 F.2d at 1235). The hypothetical question the ALJ posed to the VE was accurate and was not required to include the unsubstantiated limitation for missing work twice a month.  The VE's testimony in response provided substantial evidence supporting the ALJ's decision.  This claim is rejected.

**CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is **AFFIRMED.**  A separate judgment shall issue.


Dated:  December 9, 2016                    /s/ Janet T. Neff
                                            JANET T. NEFF
                                            United States District Judge